IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

SECURITIES AND EXCHANGE
COMMISSION,

       Plaintiff,

v.                                                    No. 13-cv-0849 RB/KBM

PROJARIS MANAGEMENT, LLC,
VICTORY PARTNERS FINANCIAL,
JOE G. LAWLER, BRANDT A. LAWLER,
MICHAEL S. LAWLER, RYAN G. LAWLER,
TIMOTHY J. LAWLER, and PAMELA M. HASS,

       Defendants.

<u>MEMORANDUM OPINION AND ORDER</u>

**THIS MATTER** comes before the Court upon Plaintiff's Motion for Judgment Against Defendants Brandt Lawler, Michael Lawler, Ryan Lawler, and Timothy Lawler.[1] (Doc. 88.) Jurisdiction arises under 28 U.S.S. § 1331. Having considered the submissions of the parties, the record, and the relevant law, the Court will **GRANT the motion in part**.

I.    **Background**

On September 9, 2013, the Securities and Exchange Commission (SEC) brought this action alleging that Defendants Joe Lawler, Brandt Lawler, Michael Lawler, Ryan Lawler, Timothy Lawler, and Pamela Hass (Individual Defendants) fraudulently sold securities in unregistered transactions in a scheme that defrauded investors. (Doc. 1.) According to the Complaint, the Individual Defendants, through Projaris Management, LLC (Projaris), and

---

[1] Defendant Joe Lawler is the father of Defendants Brant Lawler, Michael Lawler, Ryan Lawler, and Timothy Lawler.

Victory Partners Financial (Victory), pooled investor funds in a Trust that purportedly invested in metals, commodities, and real estate. (*Id*.) At least 23 individuals in four states invested approximately $1,400,000.00 in the Trust. (*Id*.) The Individual Defendants misappropriated approximately $835,000.00 of the funds for their own use and to make Ponzi-like payments. (*Id*.) More specifically as to Brandt Lawler, Michael Lawler, Ryan Lawler, and Timothy Lawler, the Complaint alleged that each of them directly or indirectly engaged in violations of 15 U.S.C. §§ 77q(a), 78j(b), and 17 C.F.R. § 240.10b-5, or aided and abetted violations of those provisions. (Doc. 1 ¶¶ 8–9.)

Joe Lawler, Brandt Lawler, Michael Lawler, Ryan Lawler, and Timothy Lawler filed Answers to the Complaint denying liability and requesting that the SEC accept a settlement in lieu of litigation. (Docs. 12, 13, 14, 20.) The Clerk entered default against Pamela Hass, Projaris, and Victory after they failed to respond to the Complaint. (Docs. 21, 22, 23.)

On August 12, 2014, the United States charged Joe Lawler with twelve counts of wire fraud, in violation of 18 U.S.C. § 1343. *See United States v. Joseph Lawler*, No. 14cr2781 JP (D.N.M. Aug. 12, 2014). The instant matter was stayed pending resolution of the criminal case. (Doc. 76.) On June 26, 2015, Joe Lawler pleaded guilty to the indictment. (Doc. 59.) On November 9, 2015, Joe Lawler was sentenced to three years of incarceration and ordered to pay restitution in the amount of $476,511.37. (Doc. 82.) The Court lifted the stay in this matter 14 days after the sentencing hearing. (Doc. 80.)

On January 5, 2016, United States Magistrate Judge Karen B. Molzen held a settlement conference, and the parties reached a settlement as to Joe Lawler and partial settlements as to Brandt Lawler, Michael Lawler, Ryan Lawler, and Timothy Lawler. (Doc. 86.)

As a result of the settlement, Joe Lawler agreed to (1) the entry of an injunction permanently restraining and enjoining him from violating 15 U.S.C. §§ 77q(a), 78j(b), and 17 C.F.R. § 240.10b-5; (2) disgorgement in the amount of $835,000.00 plus prejudgment interest of $85,146.00; and (3) a civil penalty in the amount of $150,000.00, pursuant to 15 U.S.C. §§ 77t(d) and 78u(d)(3). (Doc. 87-1.)

As a result of the partial settlements, Brandt Lawler, Michael Lawler, Ryan Lawler, and Timothy Lawler consented to the entry of an injunction permanently restraining and enjoining each of them from violating 15 U.S.C. §§ 77q(a), 78j(b), and 17 C.F.R. § 240.10b-5. (Docs. 88-1, 88-3, 88-5, 88-7.) Additionally, Brandt Lawler and Ryan Lawler agreed to disgorgement in the amounts of $6,760.00 and $3,050.00 respectively, prejudgment interest in the amounts of $633.97 and $163.51, respectively, and civil penalties in amounts to be determined by the Court. (Docs. 88-1, 88-3.) Timothy Lawler and Michael Lawler agreed that the Court would order disgorgement of their ill-gotten gains, prejudgment interest, and civil penalties in amounts to be determined by the Court. (Docs. 88-5, 88-7.)

On May 16 and 17, 2016, the SEC filed an unopposed motion for judgment as to Joe Lawler and motions for default judgments as to Ms. Hass, Projaris, and Victory. (Docs. 87, 89, 90.) On May 18, 2016, the Court entered judgment against Joe Lawler based on his settlement agreement and consent as well as default judgments against Ms. Hass, Projaris, and Victory. (Docs. 91, 92, 93.)

On May 16, 2016, the SEC filed a Motion for Judgment as to Brandt Lawler, Michael Lawler, Ryan Lawler, and Timothy Lawler based on the consents executed by each of them. (Doc. 88.) In the Motion for Judgment, Plaintiff seeks (1) entry of injunctions permanently restraining and enjoining these four Defendants from violating 15 U.S.C. §§ 77q(a), 78j(b), and

3

17 C.F.R. § 240.10b-5; (2) disgorgement of $6,760.00 plus prejudgment interest of $633.97 as to Brandt Lawler, disgorgement of $3,050.00 plus prejudgment interest of $163.51 as to Ryan Lawler, disgorgement of $25,000.00 plus prejudgment interest of $1,275.00 as to Timothy Lawler, disgorgement $1,475.00 plus prejudgment interest of $154.54 as to Michael Lawler; and (3) civil penalties in the amount of $50,000.00 as to each of these four Defendants under 15 U.S.C. §§ 77t(d), and 78u(d)(3). (Doc. 88.)

On June 23, 2016, Brandt Lawler, Michael Lawler, Ryan Lawler, and Timothy Lawler filed responses in opposition to the Motion for Judgment. (Docs. 102, 103, 104, 105.) In their responses, Brandt Lawler, Michael Lawler, Ryan Lawler, and Timothy Lawler contend that they were "small and insignificant" parts of the fraudulent scheme and should be assessed no civil penalty. (*Id*.) Additionally, Timothy Lawler contends that he transferred all the funds he withdrew to his father, he did not gain anything, and his father used him. (Doc. 105.) In its reply brief, the SEC observed that none of the four Defendants disputed any facts or requested a hearing. (Doc. 106.)

After the SEC filed its reply brief, Brandt Lawler, Michael Lawler, Ryan Lawler, and Timothy Lawler filed a motion for a hearing. (Doc. 107.) Therein, these four Defendants asserted that they believed a hearing would occur, that a hearing is necessary to determine the civil penalty for each of the remaining four Defendants and the amount of disgorgement for Timothy Lawler, and that a hearing "would potentially enlighten the court with a clearer totality of the circumstances which would, in turn, render a more confident ruling in favor of justice." (*Id*.) The SEC filed a response brief stating that it takes no position as to whether the Court should hold a hearing, and maintaining that a hearing is unnecessary. (Doc. 108.) The SEC argues that if a hearing is held, it should be limited to the only relevant contention in Brandt Lawler, Michael

4

Lawler, Ryan Lawler, and Timothy Lawler's response briefs, i.e., that these four Defendants were "small and insignificant" parts of the fraudulent scheme. (*Id.*) On July 25, 2016, Brandt Lawler, Michael Lawler, Ryan Lawler, and Timothy Lawler filed a reply brief proposing that the Court set a hearing and allow them 14 days before the hearing to submit evidence, including financial documents and potentially an affidavit on Timothy Lawler's disgorgement amount. (Doc. 110.) In the alternative, Brandt Lawler, Michael Lawler, Ryan Lawler, and Timothy Lawler requested leave to file surreplies. (*Id.*)

On July 26, 2016, Joe Lawler filed a letter stating that Timothy Lawler withdrew the $25,000.00 of investor funds to purchase precious metals for the benefit of investors, the funds were immediately transferred to Joe Lawler, and Timothy Lawler did not receive or retain the funds. (Doc. 112.) On August 3, 2016, the SEC filed a response to the letter pointing out that the letter is contrary to Joe Lawler's previous statements, is unsupported by any evidence, makes no sense, and should be stricken or ignored. (Doc. 113.)

On August 23, 2016, the Court denied Defendants' motion for a hearing and allowed Defendants 14 days to file surreplies and evidence in support of their positions. (Doc. 114.) On September 7, 2016, Timothy Lawler and Ryan Lawler each filed a surreply. (Docs. 115, 116.) In his surreply, Timothy Lawler states that while he made the withdrawals, he did not personally receive any money from the investor funds. (Doc. 115 at 1.) He contends that his actions were not egregious because of the unique position he was in: he was twenty years old, inexperienced in business practices, working a manual labor job, and being directed to act by his father. (*Id.* at 2–3.) He asserts that he lacks the necessary scienter to be an "officer" of Projaris, as he was not actively engaged in the business, did not deal with customers, was not paid, was only added to company documents "to open and operate the accounts at [his] father's direction[,]" and was

under the impression that the money was being used for investment purposes. (*Id.*) Timothy Lawler submitted financial information to show that he makes a "low income" at a full-time job, is a part-time college student, and lives a "frugal lifestyle." (*See* Docs. 115, at 4; 115-2 (Fin. Aff.); 115-3 (San Juan Coll. Enrollment Verification Certificate); 115-4 through -6 (Checking Account Statements); 115-7 through -11 (2012–15 Earnings and Tax Return Information).) While Timothy Lawler admits to being a "small and insignificant part of the fraud," he asserts that he takes full responsibility for his actions and regrets his participation. (Doc. 115 at 5.) He asks the Court to consider "the life lessons learned and pains of this . . . litigation" to be a substitute for any monetary penalty. (*Id.* at 4–5.) Alternatively, he asks that any disgorgement amount and civil penalty be assessed jointly and severally between him and his father. (*Id.* at 1.) He hopes to leave this behind and join the military, which he cannot do while this case is pending. (*Id.* at 5.)

In his surreply, Ryan Lawler asks the Court to consider the fact that he was only involved with Victory, not Projaris, from 2008–10 when he was 18–20 years old. (Doc. 116 at 1.) He asserts that he is "happy to pay his disgorgement and . . . does not deny any wrongdoing[,]" but he does not agree that civil penalties would serve a purpose. (*Id.* at 2.) He also asserts that he would find it difficult to pay a civil penalty because he has a two-year-old son, is dealing with IRS issues related to this litigation, and he is trying to go to school. (*Id.* at 4.)

## II.     Standard

Brandt Lawler, Michael Lawler, Ryan Lawler, and Timothy Lawler consented to issuance of injunctions without admitting or denying the allegations of the Complaint. (Docs. 88-1, 88-3, 88-5, 88-7.) Brandt Lawler and Ryan Lawler agreed that the amount of each of their civil penalties would be determined by the Court upon motion of the SEC. (Docs. 88-1, 88-3.)

Timothy Lawler and Michael Lawler agreed that the amount of each of their disgorgement and their civil penalties would be determined by the Court upon motion of Plaintiff. (Docs. 88-1, 88-3, 88-5, 88-7.) These four Defendants further agreed that in connection with the SEC's motion and at any hearing held on such a motion: (a) they would be precluded from arguing that they did not violate the federal securities laws as alleged in the Complaint; (b) they may not challenge the validity of the consent or the final judgment; (c) solely for the purposes of such motion, the allegations of the Complaint shall be accepted as and deemed true by the Court; and (d) the Court may determine the issues raised in the motion on the basis of affidavits, declarations, excerpts of sworn deposition or investigative testimony, and documentary evidence, without regard to the standards for summary judgment contained in Rule 56(c) of the Federal Rules of Civil Procedure. (*Id*.)

## III.  Discussion

### A.  Pro Se Litigants

Defendants[2] are pro se. The Court, therefore, reviews their "pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys." *Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted); *see also Haines v. Kerner*, 404 U.S. 519, 520–21 (1972). However, pro se status does not excuse Defendants from compliance with the rules of civil procedure. *See Montoya v. Chao*, 296 F.3d 952, 957 (10th Cir. 2002). Additionally, "conclusory allegations without supporting factual averments are insufficient." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). The Court may not assume that Defendants can prove facts that have not been established. *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983). The Court may not act

---

[2] Unless the Court otherwise identifies a Defendant by name, all references to "Defendants" in the Discussion Section refer to Brant Lawler, Michael Lawler, Ryan Lawler, and Timothy Lawler.

as an advocate for a pro se litigant. *See Hall,* 935 F.2d at 1110. Notably, "because pro se means to appear for one's self, a person may not appear on another person's behalf . . . rather, a person must be litigating an interest personal to him." *Adams ex rel. D.J.W. v. Astrue*, 659 F.3d 1297, 1299 (10th Cir. 2011).

B.     **Disgorgement**

Where a party violates the federal securities laws, this Court has broad discretion not only to order the disgorgement of any ill-gotten gains, but also to determine the amount to be disgorged. *See Sec. & Exch. Comm'n v. Fischbach Corp.*, 133 F.3d 170, 175 (2d Cir. 1997); *Sec. & Exch. Comm'n v. First Jersey Sec., Inc.*, 101 F.3d 1450, 1474 (2d Cir. 1996); *Sec. & Exch. Comm'n v. Intelliquis Int'l, Inc.*, No. 2:02-CV-674-PGC, 2003 WL 23356426, at *16 (D. Utah Dec. 11, 2003) ("The decision whether to award disgorgement, as well as the amount, is in the broad discretion of the court."). Disgorgement serves the public interest because it "deprives a wrongdoer of his unjust enrichment" and "deters others from violating the securities laws." *Sec. & Exch. Comm'n v. First City Fin. Corp.*, 890 F.2d 1215, 1230 (D.C. Cir. 1989). The amount of disgorgement should include all gains flowing from illegal activities, plus prejudgment interest, and "need only be a reasonable approximation of profits causally connected to the violation." *First Jersey Sec., Inc.*, 101 F.3d at 1475 (citation omitted); *see also Sec. & Exch. Comm'n v. Maxxon, Inc.*, 465 F.3d 1174, 1179 (10th Cir. 2006). The remedy is equitable and precision of calculation will often be impossible. *Elkind v. Liggett & Myers, Inc.*, 635 F.2d 156, 171 (2d Cir. 1980).

If the SEC meets its burden of reasonable approximation, the burden shifts to the defendants to demonstrate that their gains were unrelated to their fraudulent conduct. *Sec. & Exch. Comm'n v. Razmilovic*, 738 F.3d 14, 31–32 (2d Cir. 2013); *First City Fin.*, 890 F.2d at

1232; *Sec. & Exch. Comm'n v. Randy*, 38 F. Supp. 2d 657, 674 (N.D. Ill. 1999). "Any risk of uncertainty in calculating disgorgement should fall upon the wrongdoer whose illegal conduct created that uncertainty." *Sec. & Exch. Comm'n v. Contorinis*, 743 F.3d 296, 304–305 (2d Cir. 2014) (citing *First Jersey Sec., Inc.*, 101 F.3d at 1475); *see also First City Fin.*, 890 F.2d at 1232. Notably, financial hardship does not preclude imposition of disgorgement. *Sec. & Exch. Comm'n v. Inorganic Recycling Corp.*, No. 99 Civ. 10159 (GEL), 2002 WL 196834, 2 (S.D.N.Y. Aug. 23, 2002). "The fact that swindlers have run through the proceeds of the fraud and are now insolvent should not prevent the imposition of a remedy, since defendants may subsequently acquire the means to satisfy the judgment." *Id.* (internal quotation and citation omitted).

Brandt Lawler agreed to disgorgement in the amount of $6,760.00. (Doc. 88-1.) Ryan Lawler agreed to disgorgement in the amount of $3,050.00. (Doc. 88-3.) Timothy Lawler and Michael Lawler agreed to disgorgement of ill-gotten gains. (Docs. 88-5, 88-7.) The SEC submitted Declarations of Michael D'Angelo, Senior Accountant, SEC Division of Enforcement, establishing that Timothy Lawler retained $25,000.00 of investor funds, and that Michael Lawler retained $1,475.00 of investor funds. (Doc. 88-6, 88-8.) Michael Lawler does not contest the SEC's requested disgorgement amount of $1,475.00. (Doc. 103.) The Court finds that the SEC has satisfied its burden and that these amounts are appropriate. Brandt Lawler, Ryan Lawler, and Michael Lawler will each be ordered to pay disgorgement in the amounts requested by the SEC.

The SEC satisfied its burden of reasonable approximation that Timothy Lawler retained $25,000.00 of investor funds. (D'Angelo Decl., Doc. 88-6.) Thus, the burden shifted to Timothy Lawler to demonstrate that these gains were unrelated to his fraudulent conduct. Timothy Lawler concedes that he made the withdrawals, but he asserts that he did not retain any of the $25,000 for his own use and that his father was the perpetrator of the fraud. (Doc. 115 at 1.)

Timothy Lawler acknowledges that "[t]here is virtually no way to prove where the cash went after the money was handed over to Joe Lawler." (Doc. 115 at 1.) While he maintains that he did not receive any money from investor funds, (*id.*), Timothy Lawler has admitted that he controlled the bank accounts from which the funds were taken. (Compl. ¶¶ 4, 48, 65.) As an officer of Projaris company, he knew that investors were the source of the funds in the accounts and the funds were to be used for investment purposes. (Compl. ¶¶ 31, 45, 48.) Even if the money was transferred to Joe Lawler, Timothy Lawler's failure to account for the funds he controlled allowed the fraud to be perpetrated.

Timothy Lawler has submitted financial information to show that he makes a "low income" at a full-time job, is a part-time college student, and lives a "frugal lifestyle." (Doc. 115.) However, he offers no evidence refuting the calculations made by the SEC, and submits no calculation of his own of the amount of gain that should be disgorged. His assertions of impecuniousness do not refute the SEC's showing that the amount of disgorgement sought is a reasonable approximation of profits causally connected to his conduct in assisting his father to perpetrate the fraud.

It bears underscoring that a claim of financial hardship is not among the factors considered when evaluating whether disgorgement is appropriate. *See Inorganic Recycling*, 2002 WL 1968341, at *4 ("[C]laims of poverty cannot defeat the imposition of a disgorgement . . . "); *Sec. & Exch. Comm'n v. Universal Exp., Inc.*, 646 F.Supp.2d 552, 565 (S.D.N.Y. 2009) (explaining that "[i]n deciding a motion for disgorgement, a court is not bound to consider a defendant's claims of financial hardship" and denying any reduction of disgorgement and prejudgment interest based upon such claims); *Sec. & Exch. Comm'n v. Thomas James Assoc., Inc.*, 738 F. Supp. 88, 95 (W.D.N.Y. 1990) ("Nor may a securities law violator avoid or diminish

his responsibility to return his ill-gotten gains by establishing that he is no longer in possession of such funds due to subsequent, unsuccessful investments or other forms of discretionary spending.").

Indeed, assuming that Timothy Lawler no longer has the benefit of the investors' money, the Court should not "ignore the possibility that a defendant's fortunes will improve, and that one day the SEC will be able to collect on even a severe judgment." *Sec. & Exch. Comm'n v. Kane*, 2003 WL 1741293, at *4 (S.D.N.Y. Apr. 1, 2003). At the same time, the Court is sympathetic to Timothy Lawler's plight as the record indicates that he was led astray by his own father. Where two or more individuals or entities collaborated in the violations of the securities laws, the Court has discretion to hold them jointly and severally liable for the disgorgement of illegally obtained proceeds. *See First Jersey*, 101 F.3d at 1475–76. Accordingly, the Court will award the SEC the amount of disgorgement it has requested from Timothy Lawler, which is $25,000.00, and hold Joe Lawler jointly and severally liable for this amount.

### C. Prejudgment Interest

The Court has discretion to determine whether to award prejudgment interest. *First Jersey Sec., Inc.*, 101 F.3d at 1476. Awarding prejudgment interest, "like the remedy of disgorgement itself, is meant to deprive wrongdoers of the fruits of their ill-gotten gains from violating securities laws." *Sec. & Exch. Comm'n v. Lorin*, 877 F.Supp. 192, 201 (S.D.N.Y. 1995), *aff'd in part and vacated in part, Sec. & Exch. Comm'n v. Lorin*, 76 F.3d 458 (2d Cir. 1996). Because a defendant has use of the unlawful profits from the time of the wrongdoing until entry of judgment, prejudgment interest is necessary to capture the full measure of the defendant's ill-gotten gains. *See Sec. & Exch. Comm'n v. Warde*, 151 F.3d 42, 50 (2d Cir. 1998); *Sec. & Exch. Comm'n v. Stone*, 2009 WL 82661, at *6 (S.D.N.Y. 2009). Requiring a defendant

to pay interest prevents defendants from obtaining the benefit of "what amounts to an interest free loan procured as a result of illegal activity." *Sec. & Exch. Comm'n v. Moran*, 944 F. Supp. 286, 295 (S.D.N.Y. 1996).

Brandt Lawler agreed to prejudgment interest in the amount of $633.97. (Doc. 88-1.) Ryan Lawler agreed to prejudgment interest in the amount of $163.51. (Doc. 88-3.) Michael Lawler does not contest the SEC's requested prejudgment interest of $154.54. (Doc. 103.) Timothy Lawler agreed to prejudgment interest on the disgorgement amount determined by the Court, which equates to $1,275.00, to be paid jointly and severally with Joe Lawler. The Court finds that prejudgment interest should be awarded to the SEC in these amounts.

### D.  Civil Penalties

The SEC seeks civil penalties of $50,000.00 each from Brandt Lawler, Michael Lawler, Ryan Lawler, and Timothy Lawler. *See* 15 U.S.C. §§ 77t(d)(2), 78u(d)(3)(B). The amount of the "civil penalty is to be determined by the Court 'in light of the facts and circumstances' of the particular case." *Sec. & Exch. Comm'n v. Kenton Capital, Ltd.*, 69 F. Supp. 2d 1, 17 (D.D.C. 1998) (quoting 15 U.S.C. § 78u(d)(3)). In determining the amount of civil penalties, courts have considered various factors including: (1) the egregiousness of the violations at issue; (2) the degree of the defendant's scienter; (3) whether the defendant's conduct created substantial losses or the risk of substantial losses to investors; (4) whether the violations were isolated or recurrent; and (5) whether the penalty should be reduced due to the defendant's demonstrated current and future financial condition. *Sec. & Exch. Comm'n v. Tavella*, 77 F. Supp. 3d 353, 362–363 (S.D.N.Y. 2015). Although these factors are helpful in characterizing a particular defendant's actions, each case has its own particular facts and circumstances which determine the appropriate penalty to be imposed. *Id.* (citation omitted).

Application of the relevant factors leads to the conclusion that civil penalties are inappropriate in this case. The factual allegations of the Complaint establish that between 2008 and 2010, Joe Lawler operated Victory and raised approximately $356,000 from approximately 13 investors in multiple states. (Doc. 1.) During Victory's entire existence, Joe Lawler controlled Victory and made all decisions regarding the company. (*Id.*) Brandt Lawler and Ryan Lawler participated in operating Victory by receiving regular payments from Victory, performing work on the Victory website, soliciting investors for Victory, assisting with advertising for Victory, controlling the Victory bank account, and using investor money for undisclosed and unapproved investments. (*Id.*)

Within a few months of closing Victory, Joe Lawler opened Projaris. (Doc. 1.) In September 2010, Projaris registered as a limited liability company with the state of Wyoming. (*Id.*) Projaris continued to offer and sell securities in the form of investments in the same Trust previously controlled by Victory. (*Id.*) Joe Lawler was the operating manager of Projaris and controlled Projaris. (*Id.*) The limited liability paperwork filed with the state of Wyoming lists Brandt Lawler and Timothy Lawler as officers of Projaris and Michael Lawler as the director of Projaris. (*Id.*)

From May 2010 through approximately August 2012, Joe Lawler, Brandt Lawler, Michael Lawler, and Timothy Lawler used Projaris to solicit investors and perpetrate a fraudulent scheme. (Doc. 1.) Brandt Lawler, acting as an officer of Projaris, participated in the fraudulent scheme using Projaris by: participating in Projaris meetings with Joe Lawler; using his home address as the Phoenix address for Projaris; controlling at least one Projaris bank account that received investor money; and using new investor money to pay withdrawing investors in Ponzi-like payments. (*Id.*) Michael Lawler, Projaris' sole director, participated in the

fraudulent scheme using Projaris by: signing the limited liability paperwork for Projaris,; submitting paperwork to the IRS requesting that Projaris receive an EIN number; and controlling a Projaris bank account that received investor money and used new investor money to pay withdrawing investors in Ponzi-like payments. (*Id.*) Timothy Lawler, an officer of Projaris, participated in the fraudulent scheme using Projaris by: acting as the custodian for three Projaris bank accounts; making cash withdrawals of investor funds from the Projaris accounts he controlled, accepting retirement funds from investors, receiving investor money, and using new investor money to pay withdrawing investors in Ponzi-like payments. (*Id.*)

Given that their participation in the fraud was directed by their father, Defendants' behavior was not egregious. Additionally, there is little to no evidence of scienter with respect to the operation of their father's companies. Defendants acted at the direction of their father. Defendants aver that they did not realize that their father's actions would harm investors. Defendants' subordinate roles in Joe Lawler's fraudulent scheme are reflected in the relatively small disgorgements amounts as compared to their father. The record indicates that Defendants lack significant assets or income and have little means to pay any additional penalties. Under analogous circumstances, a district court assessed a civil penalty of $0 on a defendant who "was a much smaller beneficiary of the fraudulent scheme, as evidenced by the comparative amounts of disgorgement in question."[3] *See Inorganic Recycling Corp.*, at *5. The Court finds this approach to be persuasive. In light of the particular facts and circumstances of this case, the Court concludes that civil penalties of $0 should be assessed on Brandt Lawler, Michael Lawler, Ryan Lawler, and Timothy Lawler.

---

[3] In *Inorganic Recycling Corp.*, the court entered "disgorgement in the amount of $177,000 plus $115,769 in prejudgment interest" against the defendant who ultimately received no civil penalty. 2002 WL 1968341, at *5. This is a significantly higher total than the disgorgement amount entered against Defendants.

## IV.    Conclusion

The Court will order disgorgement and prejudgment interest in the amounts to which the parties agreed and the SEC requested. The Court finds that civil penalties of $0 should be assessed on Brandt Lawler, Michael Lawler, Ryan Lawler, and Timothy Lawler.

**THEREFORE,**

**IT IS ORDERED** that Plaintiff's Motion for Judgment Against Defendants Brandt Lawler, Michael Lawler, Ryan Lawler, and Timothy Lawler (Doc. 88) will be **GRANTED in part as described herein**.

**IT IS FURTHER ORDERED** that a Final Judgment as to Defendants Brandt A. Lawler, Michael S. Lawler, Ryan G. Lawler, and Timothy J. Lawler will issue forthwith.

_____
**ROBERT C. BRACK**
**UNITED STATES DISTRICT JUDGE**